# EXHIBIT 10

Case 3:17-cv-00113-DMS-WVG Document 104 Filed 04/15/19 PageID.1923 Page 1 of 19

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

NANCY L. FENTON,

Plaintiff,

v.

WELLS FARGO HOME MORTGAGE, TIMOTHY SLOAN, JOHN STUMPH, NORTHWEST TRUSTEE SERVICES, INC and DOES 1 – 50,

Defendants.

Case No. 17-cv-113 DMS (WVG)

**ORDER GRANTING SUMMARY JUDGMENT**

Pending before the Court is Defendant Wells Fargo Home Mortgage ("Wells Fargo")'s motion for summary judgment. Plaintiff Nancy Fenton, proceeding *pro se*, filed an opposition, and Wells Fargo filed a reply. For the following reasons, Wells Fargo's motion for summary judgment is GRANTED.

**I.**

**BACKGROUND**

This action concerns the foreclosure proceedings on Plaintiff's real property at 4175 Porte de Merano, Unit #163, San Diego, California 92122. The foreclosure is based on Plaintiff's default on a 2006 refinance loan from Wells Fargo's predecessor-in-interest, World Savings Bank, FSB. Plaintiff initiated this case with counsel. However, she is now proceeding *pro se*. Plaintiff filed a Second Amended

Complaint ("SAC") against Wells Fargo alleging four causes of actions for (1) quiet title, Cal. Civ. Proc. Code § 760.020; (2) violation of the Elder Abuse Act, Cal. Welf. & Inst. Code § 15610.30; (3) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq*.; (4) and violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* Plaintiff's SAC is largely based on the assertion that she has never obtained a loan from Wells Fargo or its predecessors, and that the signatures on the loan documents are forgeries. Wells Fargo moves for summary judgment on all claims.

**A. Plaintiff's 2006 Loan**

On July 1, 2004, Plaintiff, an elderly woman, took out a $300,000.00 loan ("2004 loan") from Wells Fargo's predecessor, World Savings Bank, FSB ("World Savings"),[1] against the subject property, 4175 Porte de Merano, Unit #163, San Diego, California 92122. (SAC ¶ 34; ECF No. 32-1, Ex. A.) The loan was secured by a deed of trust (Instrument No. 2004-064435). (*Id.*)

On September 22, 2006, Plaintiff obtained a refinance loan ("2006 loan") from World Savings, in the amount of $308,500.00, which paid off her 2004 loan. (Declaration of Brooke Bosier in Supp. of Mot. ("Bosier Decl.") ¶¶ 10, 12, Exs. 2, 4; ECF No. 84, Ex. 6.) Because Plaintiff's 2006 loan paid off her 2004 loan, she received a full reconveyance of the 2004 deed of trust. (*Id.*)

The 2006 loan was assigned number xxxxxx8090.[2] (Bosier Decl. ¶ 10, Ex. 2). The loan was memorialized by an Adjustable Rate Mortgage Note Pick-A-

---

[1] The letter from the Office of Thrift Supervision and Wachovia's charter documents indicate that World Savings changed its name to Wachovia Mortgage, FSB, effective December 31, 2007. (Bosier Decl. ¶ 2, Ex. 1.) The certification by the Comptroller of the Currency Administrator of National Banks indicates that Wachovia merged with Wells Fargo Bank, N.A., effective November 1, 2009. (*Id.*)

[2] According to Wells Fargo, the 2006 loan number was later changed to xxxxxx7201 "due to an internal conversion of loan numbers by Wells Fargo for this portfolio of mortgages." (Bosier Decl. ¶ 37.)

Payment Loan ("Note"), with a signature in Plaintiff's name. (*Id.*) On October 6, 2006, the loan was secured by a deed of trust ("Deed of Trust") against the subject property (Instrument No. 2006-0715051). (*Id.* ¶ 11, Ex. 3.) The Deed of Trust also included a signature in Plaintiff's name. (*Id.*) A licensed notary public, Eugene Yuzhuk, kept a notary journal reflecting the details of Plaintiff's execution of the Deed of Trust, which included Plaintiff's signature and her right thumb print. (Declaration of Eugene Yuzhuk in Supp. of Mot. ("Yuzhuk Decl.") ¶ 5, Ex. 1; Deposition of Eugene Yuzhuk ("Yuzhuk Dep.") 8:10–9:14, 10:22–14:7, 16:7–20:9, 22:9–13, 28:17–29:2.) Wells Fargo's certified document examiner compared the signatures on the Note, Deed of Trust, and the notary journal to Plaintiff's known signatures from her passport, credit card, and pleadings, and opined that the signatures were from the same individual. (Declaration of Frank Hicks in Supp. of Mot. ("Hicks Decl.") ¶¶ 5, 6, Ex. 1.) Wells Fargo's certified latent print examiner concluded that the thumbprint in the notary journal was Plaintiff's. (Declaration of Steven Tillman in Supp. of Mot. ("Tillman Decl.") ¶¶ 8–12, Ex. 2.)

The Note for Plaintiff's 2006 loan provided that Plaintiff would make her loan payments every month starting November 2006. (Bosier Decl. ¶ 10, Ex. 2.) Plaintiff made loan payments to Wells Fargo and its predecessors for nine years, from November 21, 2006 to November 30, 2015. (*Id.* ¶¶ 16–18, Exs. 8, 9; Declaration of Richard Arshonsky in Supp. of Mot. ("Arshonsky Decl."), Exs. 9, 10.)

**B. Plaintiff's Class Settlement**

Plaintiff selected to make a monthly payment for the 2006 loan in the amount of $1,067.70. (Bosier Decl., Ex. 5.) However, her monthly payment increased annually due to the Note's adjustable interest rate. (*Id.*, Ex. 2.) In November 2010, Plaintiff started sending complaints about her payment plan. (*Id.* ¶ 19, Ex. 10.) For example, in a November 1, 2010 letter, Plaintiff identified the loan by its 8090 number, expressed her dissatisfaction about the payment increase, indicated she has "never missed a payment," and that she "[could] not afford to pay a higher

payment[.]" (*Id.*) Subsequently, Plaintiff sent three additional letters in 2011 about the payment increase. (*Id.*)

In 2011, Plaintiff became a member of a "Pick-A-Payment" class settlement. (Affidavit of Amy Lake in Supp. of Mot. ("Lake Aff.") ¶¶ 4–7, Ex. A). The class action was based on the allegation that the Pick-A-Payment mortgage loan documents "failed to make adequate disclosures regarding the certainty of negative amortization, the actual payment schedules, the interest rates on which these schedules were based, and the full terms of the parties' legal obligations." *In re Wachovia Corp. "Pick-A-Payment" Mortg. Marketing and Sales Practices Litigation*, 2011 WL 1877630, at *1 (N.D. Cal. May 17, 2011). Plaintiff was in the category of "Settlement Class B," which "consists of borrowers who still hold their loans and are not in default." (*Id.*) On October 7, 2011, Wells Fargo sent Plaintiff a settlement check in the amount of $178.04, which Plaintiff cashed in. (Lake Aff. ¶¶ 8-9; Ex. B.)

**C. Purported Forged Signature and Bankruptcy**

In a January 25, 2012 letter, Plaintiff first asserted that the signatures on the Note and Deed of Trust were not her own. (Bosier Decl. ¶ 22, Ex. 13 ("[T]he signatures affixed to the documents are not mine[.]")).

On February 5, 2014, Plaintiff filed for Chapter 7 bankruptcy. (Def.'s RJN, Exs. A, B.)[3] Plaintiff filled out the bankruptcy forms, dated January 24, 2014. (*Id.*) When asked to disclose "contingent and unliquidated claims of every nature," and "personal property of any kind," Plaintiff answered "NONE." (Def.'s RJN, Ex. A. at 10, 11.) In her Schedule D form, titled "Creditors Holding Secured Claims," she

---

[3] Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of Plaintiff's bankruptcy petition (Ex. A), the bankruptcy court's docket (Ex. B), Plaintiff's bankruptcy discharge (Ex. C), Wells Fargo's "Notice of Default and Election to Sell Under Deed of Trust" (Ex. D), and the "Notice of Trustee's Sale" (Ex. E). *See* Fed. R. Evid. 201(b).

listed Wells Fargo Home Mortgage as a creditor, provided her "8090" loan number, described Wells Fargo as holding a "2006 First Trust Deed" against the subject property, and disclosed that she owed $334,655.00 in debt. (*Id.* at 13.) Plaintiff indicated that the debt was not disputed. (*Id.*) Similarly, in her "Statement of Intention" form, Plaintiff identified Wells Fargo as a creditor holding a debt secured by the subject property. (*Id*. at 32.) She indicated, "I intend to … Retain and Make Payments." (*Id.*) Based on this information, Plaintiff disclosed assets totaling $7,333. (*Id.* at 11.) She consistently declared under penalty of perjury that all of the information she provided was true and correct. (*See* Def.'s RJN, Ex. A.) On May 6, 2014, Plaintiff was discharged of her debt in her Chapter 7 bankruptcy proceeding. (Def.'s RJN, Ex. C.)

**D. Plaintiff's Communications and Default**

Plaintiff ceased making her mortgage payments on December 15, 2015. (Def's RJN, Ex. D.) On February 8, 2016, Plaintiff wrote a letter to Wells Fargo that "Wells Fargo does not hold a mortgage on [her] property." (Bosier Decl., Ex. 16.) Joseph Wenker, an Executive Resolution Specialist ("Resolution Specialist") from Wells Fargo's Customer Care and Recovery Group, was assigned as Plaintiff's case manager to provide a resolution. (*Id.*) According to Wenker's case history, he placed three calls to Plaintiff over a two-week period to address Plaintiff's complaint about the validity of the 2006 loan. (*Id.*) The three calls were in the form of voicemails, followed by a confirmation letter. (*Id.*)

On June 23, 2016, Plaintiff submitted a letter to Wells Fargo requesting a 1099 form. (Bosier Decl., Ex. 17.) Heather Burgett, another Resolution Specialist, was assigned as Plaintiff's case worker to provide a resolution. (*Id.*) According to Burgett's case history, she placed four calls to Plaintiff over a two-week period to address Plaintiff's inquiry of the 1099 form. (*Id.*) For three of the calls, Burgett was "unable to leave a message." (*Id.*) For one of the calls, Burgett left a voicemail, followed by a letter. (*Id.*)

On August 22, 2016, Wells Fargo recorded a Notice of Default and Election to Sell Under Deed of Trust, indicating that Plaintiff was $16,251.75 in default of her loan. (Def.'s RJN, Ex. D.) Subsequently, a trustee's sale was scheduled for January 11, 2017. (Def.'s RJN, Ex E.)

On October 4, 2016, Plaintiff filed a complaint against Wells Fargo with the Consumer Financial Protection Bureau ("CFPB"), asserting that she has "never had a mortgage with Wells Fargo" and that Wells Fargo's notice of foreclosure proceedings constitutes fraud against her. (Bosier Decl., Ex. 18.) Kryzysztof Darowski, another Resolution Specialist, was assigned as Plaintiff's case worker to provide a resolution. (*Id.*) On October 27, 2016, Plaintiff sent another letter to Wells Fargo disputing the validity of the mortgage. (*Id.*, Ex. 19.) Darowski was again assigned as Plaintiff's case manager. (*Id.*) According to Darowski's case history, he placed nine calls to Plaintiff over a two-month period to address Plaintiff's complaint and concern. (*Id.*, Exs. 18, 19.)

## II.

## LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. However, to avoid summary judgment,

the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.*; *see also Butler v. San Diego Dist. Atty's Off.*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Although courts typically hold a *pro se* plaintiff to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the plaintiff "is not relieve[d] of his obligation to supply competent evidence, not merely argument, showing that a material factual dispute exists to be tried." *Dooley v. City of Long Beach*, 2014 WL 7405444, at *6 (C.D. Cal. 2014); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). "A district court is not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citations and internal quotations omitted).

"A verified complaint may be used as an opposing affidavit under Rule 56" if it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified motions and pleadings may be considered as evidence). A complaint is "verified" if the drafter "state[s] under penalty of perjury that the contents [are] true and correct." *Schroeder*, 55 F.3d at 460 n.10. To constitute an opposing affidavit, the verified complaint may not be based "on information and belief." *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991).

/ / /

## III.

## DISCUSSION

### A. Judicial Estoppel

Wells Fargo claims Plaintiff should be judicially estopped from asserting claims based on the purported invalidity of the 2006 loan and forged documents because she concealed these claims in her bankruptcy and benefited from the concealment. The Court agrees.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001) (citations omitted). A court may invoke "judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)).

Here, Plaintiff discovered that the signatures on her loan documents were purportedly forged and invalid on January 25, 2012. (Bosier Decl. ¶ 22, Ex. 13.) Two years later, on January 24, 2014, Plaintiff completed her Chapter 7 bankruptcy forms. Plaintiff concedes that even while she was "filling out the bankruptcy paperwork," she knew that "Wells Fargo was claiming a falsified mortgage[.]" (ECF No. 86 at 6.) Despite her knowledge, Plaintiff failed to disclose this information in her bankruptcy. When asked to disclose "contingent and unliquidated claims of every nature," Plaintiff answered "NONE." *See Hamilton*, 270 F.3d at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset.").

Though Plaintiff now contends she has "never had a mortgage with Wells Fargo" or its predecessors, (SAC ¶ 2; *see* ECF No. 92 at 3), in her Schedule D form, she listed Wells Fargo as a creditor holding a secured claim, provided her "8090" loan number, described Wells Fargo as holding a "2006 First Trust Deed" against the subject property, and disclosed that she owed $334,655.00 in debt. She also indicated this debt was not disputed. Similarly, in her "Statement of Intention" form, Plaintiff, again, identified Wells Fargo as a creditor holding a debt secured by the subject property, and indicated that she intended to retain and make these payments. And when asked to list whether she had "personal property of any kind," Plaintiff answered "NONE." Plaintiff declared under the penalty of perjury that all of this information was true and correct. Based on this information, Plaintiff disclosed assets totaling only $7,333. Her disclosures in the bankruptcy proceeding not only affirmed the validity of the 2006 loan, but also allowed her to enjoy the benefits of an automatic stay and a discharge of debt.

Plaintiff had knowledge of the purported invalidity of the loan two years prior, and throughout her bankruptcy. Yet, she concealed this information and benefitted from its concealment. Therefore, Plaintiff is precluded from now challenging the loan's validity. *See Hamilton*, 270 F.3d at 784 (plaintiff "is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings"). Accordingly, the Court invokes judicial estoppel "to protect the integrity of the bankruptcy process." *Id.* at 785.[4]

/ / /

---

[4] The record also demonstrates Plaintiff ratified the 2006 loan obligation by (1) cashing in a class settlement check from Wells Fargo as a "borrower who still h[e]ld [her] loan[] and [was] not in default"; (2) acknowledging the existence of the 2006 loan through multiple letters referencing the loan by its 8090 number, including a letter indicating she has "maintained a stellar record when, it comes to paying [her] mortgage." (Bosier Decl., Ex. 10); and (3) making payments for the 2006 loan for nine years, from November 21, 2006 to November 30, 2015.

**B. Successor-in-Interest**

One of Plaintiff's primary arguments in her opposition is that Wells Fargo is not a successor of World Saving and Wachovia, despite that her SAC states, "Defendant WELLS FARGO BANK, N.A., is successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB, and successor by merger with Wells Fargo Home Mortgage, Inc." (SAC ¶ 16.) Plaintiff fails to point to any evidence to rebut the charter documents and certificates from the Office of Thrift Supervision and the Office of the Comptroller of the Currency, which show that World Savings changed its name to Wachovia Mortgage, FSB, effective December 31, 2007, and that Wachovia merged with Wells Fargo Bank, N.A, effective November 1, 2009. (Bosier Decl. ¶ 2, Ex. 1.) Moreover, courts have consistently recognized the corporate succession from World Savings and Wachovia to Wells Fargo. *See, e.g.*, *Reyes v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 198129, *7 (C.D. Cal. Aug. 17, 2017) ("[N]umerous state and federal courts … have recognized the corporate succession from World Savings to Wells Fargo[.]"); *Thompson v. Wells Fargo Bank, N.A.*, No. 16-4268, 2016 WL 5897733, at *2 (N.D. Cal. Oct. 11, 2016) ("Although plaintiff obtained the loan from World Savings Bank in 2007, Wells Fargo obtained an interest in the loan as the successor to World Savings Bank."); *Young v. World Savings Bank, FSB*, No. 11-879, 2011 WL 3298957, at *2 (S.D. Cal. Aug. 1, 2011) ("Subsequent to making the loan, World Savings Bank changed its name to Wachovia Mortgage, FSB. [] Wachovia Mortgage then merged into Wells Fargo Bank, N.A. Pursuant to this series of name changes and mergers, Wells Fargo has standing to foreclose pursuant to the deed of trust."). Therefore, there is no genuine dispute that Wells Fargo is a successor-in-interest of World Savings and Wachovia.

**C. Quiet Title**

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Watson v. Bank of Am., N.A.*, No. 16-

513, 2016 WL 3552061, at *19 (S.D. Cal. June 30, 2016); *see, e.g.*, *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d. 952, 975 (N.D. Cal. 2010) ("[A] borrower may not assert quiet title against a mortgagee without first paying the outstanding debt on the property.") Here, Plaintiff asserts that she does not have to pay any loans on the subject property because she has never taken out a loan from Wells Fargo or its predecessors. Because Plaintiff is judicially estopped from asserting this claim, Plaintiff's quiet title claim is dismissed.[5]

**D. Financial Elder Abuse**

Next, Wells Fargo seeks to dismiss Plaintiff's financial elder abuse claim on grounds it is time-barred, and the loan payments were not taken for "wrongful use or with intent to defraud" as required under the California Elder Abuse Act.

California's Elder Abuse Act was enacted to "protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." *Negrete v. Fid. & Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1001 (C.D. Cal. 2006); *see* Cal. Welf. & Inst. Code § 15610.30. An "elder" is defined as a person over the age of 65.[6] Cal. Welf. & Inst. Code § 15610.27. Financial abuse of an elder occurs when a person or entity "[t]akes, secretes, appropriates or retains real or personal property of an elder" or assists in doing so "for a wrongful use or with intent to defraud, or both." *Id.* § 15610.30(a)(1)–(2). "A person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." *Id.* at § 15610.30(b).

/ / /

[5] In light of this ruling, the Court need not address Wells Fargo's alternative grounds to dismiss Plaintiff's quiet title claim.

[6] Plaintiff asserts, and Wells Fargo does not dispute, that she "is an elder adult as defined in California Welfare and Institutions Code Section 15610.27." (SAC ¶ 34.)

**1. Statute of Limitations**

The statute of limitations for a financial elder abuse claim is "four years after the plaintiff discovers or ... should have discovered the facts constituting the financial abuse." *Id.* § 15657.7. Here, Plaintiff discovered the facts constituting the purported financial abuse on January 25, 2012, when she first asserted the 2006 loan documents were forged. Thus, the statute of limitations for this claim expired four years later, on January 25, 2016. Because Plaintiff commenced an action against Wells Fargo on December 6, 2016, over ten months after the expiration of the statute of limitations period, her financial abuse claim is time-barred.

**2. Wrongful Use or Intent to Defraud**

Even if this claim was not time-barred, it would be unable to withstand summary judgment. The basis of Plaintiff's financial elder abuse claim is that Wells Fargo "[took] funds from [her] and refuse[d] to return them" despite that she never had a loan with Wells Fargo. (SAC ¶¶ 34, 36.) As discussed above, Plaintiff is judicially estopped from raising this claim. Accordingly, Wells Fargo's motion for summary judgment is granted as to Plaintiff's financial elder abuse claim.[7] *See also Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2011) (it is not a "wrongful use" of property for a "commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid … [A] commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights.") (citing *Sierra–Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 334–335 (1991)).

**E. Rosenthal Fair Debt Collection Practices Act**

The Rosenthal Fair Debt Collection Practices Act ("RFDCPA") was enacted to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in

[7] In light of this ruling, the Court need not address Wells Fargo's alternative grounds to dismiss Plaintiff's financial elder abuse claim.

the collection of consumer debts." Cal. Civ. Code § 1788.1. Plaintiff's SAC alleges violations of three sections of the RFDCPA: Sections 1788.10, 1788.11, and 1788.173.

Wells Fargo seeks judgment on Plaintiff's RFDCPA claim on grounds it is barred by the statute of limitations, it did not engage in debt collection, and its practices do not amount to an RFDCPA violation.

**1. Statute of Limitations**

The RFDCPA has a statute of limitations of one year, "which runs from 'the date of the occurrence of the violation,' in this instance, the date of the last allegedly harassing call." *See Kennedy v. Wells Fargo Bank, N.A.*, No. 11-675, 2012 WL 2792933, at *2 (N.D. Cal. July 9, 2012) (citing Cal. Civ. Code § 1788.30(f)).

Wells Fargo contends Plaintiff first became aware of its attempt to collect on the loan on January 25, 2012, and thus her claim was time-barred after January 25, 2013. However, as the Court explained in a prior order, the statute of limitations does not commence from the initiation of the collection activity, but rather the last alleged violation. *See* ECF No. 36; *Kennedy*, 2012 WL 2792933, at *2; *Aho v. AmeriCredit Financial Services, Inc.*, No. 10-1373, 2012 WL 273763, at *2 (S.D. Cal. Jan. 31, 2012) ("[W]hether Defendant initiated any collection activity in the year prior to the filing of the Complaint is not the issue. Rather, the issue is whether Defendant engaged in any conduct that violates the Rosenthal Act within that one year.") On this issue, there is, at a minimum, a genuine issue of material fact. For instance, the record indicates Wells Fargo's last allegedly harassing call occurred on December 1, 2016, (Bosier Decl., Ex. 18), which is only five days prior to Plaintiff's initial complaint. Therefore, Wells Fargo is not entitled to summary judgment on this basis.

**2. Debt Collection**

To be a basis for an RFDCPA claim, "the communication must be in the context of collection efforts. *Selby v. Bank of America, Inc.*, No. 9-2079, 2010 WL

4347629, at *8 (S.D. Cal. Oct. 27, 2010).

Wells Fargo contends the calls and messages by the Resolution Specialists from its Customer Care and Recovery Group do not constitute "debt collection" under the RFDCPA. Although the case history of the Resolution Specialists indicates the calls and messages were in response to Plaintiff's concerns about the validity of the loan and her request for a 1099 form, Plaintiff's verified SAC alleges the Resolution Specialists attempted to collect debt from Plaintiff through the calls. Specifically, Plaintiff asserts that Heather Burgett "repeatedly demanded that Plaintiff pay immediately," (SAC ¶ 10), that Krzysztof Darowski "called Plaintiff daily" and "verbally threatened that he would immediately take Plaintiff's home," (SAC ¶ 11), and that Joseph Wenker "repeatedly called Plaintiff in late 2015 and early 2016, demanding immediate payment." (SAC ¶ 12.) Because these assertions are based on Plaintiff's personal experiences, rather than her belief, Plaintiff's verified SAC operates as an opposing affidavit and creates a triable issue as to whether Wells Fargo engaged in debt collection. Therefore, Wells Fargo's motion for summary judgment is denied on this ground.

**3. Civil Code § 1788.10**

Plaintiff alleges Wells Fargo violated Section 1788.10[8] of the California Civil

---

[8] Section 1788.10 prohibits:
"(a) The use, or threat of use, of physical force or violence or any criminal means to cause harm to the person, or the reputation, or the property of any person;
(b) The threat that the failure to pay a consumer debt will result in an accusation that the debtor has committed a crime where such accusation, if made, would be false;
(c) The communication of, or threat to communicate to any person the fact that a debtor has engaged in conduct, other than the failure to pay a consumer debt, which the debt collector knows or has reason to believe will defame the debtor;
(d) The threat to the debtor to sell or assign to another person the obligation of the debtor to pay a consumer debt, with an accompanying false representation that the result of such sale or assignment would be that the debtor would lose any defense to the consumer debt;

Code "by threatening plaintiff that failure to make immediate payment would result in legal action or nonjudicial action when such action was not permitted by law." (SAC ¶ 28.) Because this claim is based on the purported invalidity of the 2006 loan, Plaintiff is judicially estopped from asserting this claim.

**4. Civil Code § 1788.11**

Next, Plaintiff contends Wells Fargo violated Section 1788.11[9] of the California Civil Code by "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with plaintiff with such frequency as to be unreasonable and to constitute harassment under the circumstances." (SAC ¶ 29.)

"Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002). However, "no bright-line rule exists for the amount and pattern of calls necessary to raise a triable issue[.]" *Neu v. Genpact Services, LLC*, No. 11-2246, 2013 WL 1773822, at *4 (S.D. Cal. Apr. 25, 2013). "Intent to annoy, abuse, or harass may be inferred from the frequency of calls, or the place to which the phone calls are made." *Jones v. Rash Curtis & Associates*, No. 10-225, 2011 WL 2050195, at *2 (N.D. Cal. Jan. 3, 2011) (citing *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev.

---

(e) The threat to any person that nonpayment of the consumer debt may result in the arrest of the debtor or the seizure, garnishment, attachment or sale of any property or the garnishment or attachment of wages of the debtor, unless such action is in fact contemplated by the debt collector and permitted by the law; or
(f) The threat to take any action against the debtor which is prohibited by this title." Cal. Civ. Code. § 1788.10.

[9] Section 1788.11 prohibits a debt collector from "causing a telephone to ring repeatedly or continuously to annoy the person called," and "communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute harassment to the debtor under the circumstances." Cal. Civ. Code § 1788.11(d)-(e).

2008). Examples of offending conduct include immediately calling after the debtor hangs up, calling multiple times in a single day, calling the debtor's place of employment, family, or friends, calling at odd hours, or continually calling after the debtor has requested that the debt collector cease and desist communication. *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1227–28 (E.D. Cal. 2010); *Jones*, 2011 WL 2050195, at *2.

Considering the evidence of record, the Court finds that Wells Fargo's conduct does not rise to the level of annoyance and harassment required under Section 1788.11. The call records reveal Wenker placed three calls to Plaintiff over a two-week period in response to Plaintiff's February 8, 2016 letter about the validity of the loan, and Burgett placed four calls to Plaintiff over a two-week period in response to Plaintiff's June 23, 2016 request for a 1099 form. Although Plaintiff alleges Darowski "called Plaintiff daily," (SAC ¶ 11), Wells Fargo has produced call records that indicate Darowski placed nine calls to Plaintiff over a two-month period in response to her October 4, 2016 complaint and October 27, 2016 letter regarding the 2006 loan. Plaintiff does not dispute the validity of this record. Nor does she present any evidence that Wells Fargo employees called her immediately after she hung up, called her multiple times in a single day, called her place of employment, family, or friends, called her at odd hours, or called after a request to stop calling. Though Plaintiff asserts that Wells Fargo called her up to 19 times a day to demand payment, (ECF No. 86 at 5; ECF No. 84 at 7), this allegation in her unverified opposition is not sufficient to withstand summary judgment. *See, e.g.*, *Artega*, 733 F. Supp. 2d at 1238 ("[L]iberal construction of a statute does not mean that plaintiff withstands summary adjudication of her claim without having evidence to support it."); *see also Jones*, 2011 WL 2050195, at *3 (summary judgment for creditor even though it made 179 calls to debtor in less than a year because there was no evidence of intentional harassment).

/ / /

**5. Civil Code § 1788.17**

Plaintiff also alleges Wells Fargo violated Section 1788.17 of the California Civil Code, which requires compliance with Sections 1692b to 1692j of Title 15 of the United States. *See* Cal. Civ. Code § 1788.17; *Oya v. Wells Fargo Bank, N.A.*, No. 18-1999, 2019 WL 157802, at *4 (S.D. Cal. Jan. 9, 2019) ("The Rosenthal Act requires all debt collectors attempting to collect a consumer debt to comply with the FDCPA, 15 U.S.C. §§ 1692b through 1692j.") (brackets omitted). Plaintiff alleges violations of Sections 1692d, 1692e, and 1692f.

The basis of Plaintiff's Section 1692d[10] claim is that Wells Fargo "engag[ed] in conduct the natural consequence of which was to harass, oppress, or abuse plaintiff and other parties in connection with connection of a debt." (SAC ¶ 27.) Plaintiff's Section 1692d claim is dismissed for the same reasons as her Section 1788.11 claim. *See Joseph*, 238 F. Supp. 2d at 1168 (the language in Sections 1788.11(d) and 1788.11(e) "closely mirror[]" that of Section 1692d(5) and thus "will be similarly interpreted").

The grounds for Plaintiff's Section 1692e[11] and Section 1692f[12] claims are that Wells Fargo "us[ed] false, deceptive, or misleading misrepresentations or means in connection with the collection of a debt" and "[a]ttempt[ed] to collect money not authorized by the agreement creating the debt." (SAC ¶ 27.) Because these claims

---

[10] Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

[11] Section 1692e prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

[12] Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," and violative acts include "[t]he collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f.

are premised on the purported invalidity of the 2006 loan, Plaintiff is judicially estopped from asserting these claims.

**F. Unfair Competition Law.**

California's Unfair Competition Law ("UCL") prohibits business practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. "Each prong of Section 17200 provides a separate and distinct theory of liability." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

Plaintiff's assertion that Wells Fargo engaged in "unlawful" conduct is premised on her claims for quiet title, violation of the RFDCPA, and financial elder abuse, which fail for the reasons discussed above. *See Horton v. California Credit Corp. Retirement Plan*, 835 F.Supp.2d 879, 893 (S.D. Cal. 2011) ("[T]he success of Plaintiffs' UCL claim depends on the success of their other causes of action[.]") (citing *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

Plaintiff's contention that Wells Fargo engaged in "fraudulent" and "unfair" conduct are based on Wells Fargo's purported attempt to "collect on a non-existent loan," and "enforce an obligation to which Plaintiff did not agree or benefit." (SAC ¶¶ 41, 43.) Because Plaintiff is judicially estopped from asserting these claims, Plaintiff's UCL claim is dismissed.

**G. Request to Reopen Discovery**

In her opposition, Plaintiff requests the Court to "re-open discovery." (ECF No. 86 at 10.) Federal Rule of Civil Procedure 56(d) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the court may deny the motion for summary judgment or continue the hearing to allow for such discovery. Fed. R. Civ. P. 56(d); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). In making a Rule 56(d) motion, a party opposing summary judgment must "make clear what information is sought and how it would preclude summary judgment." *Margolis*,

140 F.3d at 853–54.

Here, Plaintiff contends discovery should be reopened because Wells Fargo did not inform her that it would be providing declarations from Brooke Bossier, Frank Hicks, Steven Tillman, and Amy Lake. (ECF No. 86 at 10.) Plaintiff asserts "these undisclosed Declarations are grounds for a 'MOTION TO RE-OPEN Discovery[.]'" (*Id.*) However, this is not a ground for a Rule 56(d) motion. Because Plaintiff fails to "identify the specific facts that further discovery would have revealed or explain why those facts would have precluded summary judgment," the Court denies Plaintiff's motion to continue the hearing to allow for such discovery. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Wells Fargo's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: April 15, 2019

Hon. Dana M. Sabraw
United States District Judge